Good morning. I'm Richard Such for the appellant Alan Winters. The question in this case is whether after the court had first held a hearing before the preliminary examination to determine the defendant's competence to stand trial, it was required to hold another hearing during the trial when the defendant engaged in some bizarre behavior, huddling under the counsel table and sobbing. Now our contention is that the court was required to hold such a hearing and that one incident of bizarre behavior may have been the event that should have triggered the holding of such a hearing, but there was plenty of other evidence that had accumulated during the trial and by the time of the sanity trial, which had not been before the court at that previous competence hearing, which did raise a reasonable doubt about the defendant's competence to continue to be tried. On page 67 of the appellant's opening brief, I listed nine of those reasons and they fall roughly into four categories. The first category is the defendant's history over a period of several years of mental abnormality and treatment with psychotropic medication and the opinion of all the mental health experts who examined him and testified at the trial, there were two psychiatrists and two psychologists, that he was mentally ill to one degree or another. Even the psychiatrist called by the prosecution who was the least convinced of the defendant's, well he did not believe that the defendant was insane, but nevertheless he was of the opinion that the defendant was seriously mentally ill. Two of those experts, the two called by the defense, a psychiatrist and a psychologist, were of the opinion not only that the defendant was insane at the time of the offense, but that he had not recovered his sanity as of the time of their examination. What was inconsistent with the prior or previously available information, given that he has this reaction to the testimony, he is then found huddled under the table in obvious distress. His lawyer, however, says I'm not going to pursue this question of incompetency to stand trial. What's inconsistent with that behavior, with the information already in the record about his competency to stand trial? What's new about this? You asked what's new about the incident of the hearing? Just to say, why should that incident have prompted a second hearing? Well, as I said, I think that was just one event that should have triggered it, but what really should have caused the holding of a hearing was the accumulation of evidence that had not been presented to the judge at the time of the original hearing, but was presented to the trial judge. When that one thing happened, when the defendant was seen huddling under the counsel table and sobbing, or when that matter was brought to the attention of the court, perhaps at that point the court should have said, well, now, in the light of that and in the light of all the other evidence I've heard about his long-standing mental illness, his … Yeah, well, what's new? You see, that's not new from the first hearing, right, the mental illness. What new factors, what new evidence was there that would require a second hearing? Well, I disagree that it wasn't new, because at the first hearing the judge had only one report of Dr. Hjorstvang, and that report didn't tell the judge anything about the facts of the, the bizarre facts of the offenses. It told the court very little about the defendant's mental health history, but it did say that he was suffering from dissociation, amnesia, generalized anxiety, post-traumatic stress disorder, personality disorder, was chronically disturbed. And then when the guilt trial was presented to the trial judge, a lot more evidence of the defendant's very bizarre behavior, not only during the offense, but in the days afterwards before he turned himself into the police was presented, which wasn't known to the judge at that hearing. That included the defendant's multiple suicide attempts during the period of time before he turned himself in. Dr. Hjorstvang's report at the original competency hearing said nothing about those things. And then the third group of facts that should have raised a doubt in the mind of the trial judge was the evidence that was presented there at the sanity phase of the trial, that the defendant was still mentally ill. The California Court of Appeals said that there wasn't any substantial evidence that raised a doubt about the defendant's competence at the time of trial, because these psychiatric and psychological opinions that he was mentally ill were all based on an evaluation that took place a year before the trial. But of course, mental illness isn't something like a case of the chicken pox or measles that lasts for a couple of weeks and goes away and never comes back. There was plenty of evidence that the defendant had been mentally ill for a number of years. He was mentally ill at the time of the offense, and he continued to be mentally ill for the year before he went to trial. But of course, mental illness is not the criterion here. The decision we're asked to make is whether he was competent to stand trial, able to assist his attorney, and so on. What importance, if any, should we attach to the fact that his attorney, at the time of this episode in the courtroom, did not seek a hearing with respect to competence, indeed, specifically said, I'm not going to pursue it at this time? I'm sorry. I neglected to reply to that when you raised it earlier. That, of course, is a factor, and it's entitled to some significance. But I've cited in my briefs several of the leading cases in which that also was true, that the attorney didn't express a doubt about the defendant's competence. Nevertheless, the court held that there was other evidence in the record which did raise a doubt about the defendant's mental competence. And so where there is conflicting evidence, the Supreme Court decisions require that the court hold a hearing to resolve those conflicts. You can't resolve the conflict without a hearing based on just one fact, such as the fact that the lawyer didn't request a hearing that particular time. Now, Mr. Such, as far as the law to be applied, there is no specific Supreme Court case that in the circumstances under which a second hearing is required after a first hearing is found a defendant competent. What case, you know, is closest to your situation that you think helps you on that clearly established Supreme Court law requirement? I agree with the court. In fact, I think I said in my brief, I don't believe there is a United States Supreme Court case that specifically addresses the question of what, after there has been one competency hearing, there needs to be another one. But I think it's just the same general standard that the Supreme Court established in Haight v. Robinson, Droke v. Missouri and other cases that went whenever a doubt appeared. Oh, it's the same standard as to whether or not a competency hearing is required in the first place. Yes, right. Of course, if there has to be something new that wasn't known to the court at the time of the original competency hearing, but when after that original competency hearing some new evidence is presented to the court that raises a doubt about the defendant's competence, then the court should conduct a hearing. In this case, almost all the evidence was new. At the original hearing, the court had only one report of the one doctor that didn't go into the facts of the case, wasn't nearly as strong evidence as was presented at the trial of the seriousness of the defendant's mental illness. That judge wasn't aware of episodes of bizarre behavior in the courtroom, the huddling and sobbing under the table, the defendant scratching himself until he was bleeding, things like that, or the very bizarre facts of the case. Those facts weren't presented to that original judge at all, but only did they come out during the trial. Probably the most important category of factors here that wasn't known at all to the judge at the original hearing, but did come out during the trial, was that the defendant had been and continued to be on psychotropic medication. In fact, that psychotropic medication may have had a sedative effect, may have kind of calmed him down during the trial so that it didn't appear that he was as disturbed as he was. The evidence that appeared before the judge for the first time at trial was the testimony of the jail mental health treatment specialist, whose name was Margaret Blush. She said that in the months up to September 1995, that would have been the year before the trial, the defendant was on a couple of antidepressants and an anti-anxiety drug called Klonopin. All these drugs have sedative properties and they have a tendency to potentiate each other. The anti-anxiety drugs can multiply the effect of the antidepressant drugs. Okay. Your time has now expired. Why don't we hear from the other side and we'll give you a minute for rebuttal. All right. Thank you. Thank you. Good morning. Peggy Ruffray, Deputy Attorney General for Respondent. Your Honor, it's our position that the State Court's conclusion that a second competency hearing was not required based on the evidence in this case was not objectively unreasonable under the deference standard that the court is required to apply. All of the relevant factors, including the circumstances of the emotional reaction itself, support that conclusion that a second competency hearing was not required. Now, the emotional reaction occurred during a recess at the trial and it was when the defendant got into the difficult testimony about what the defendant had done to her and was about to incriminate him with this very damaging testimony. She became upset. So at that point during the recess, the defendant got upset himself. His attorney found him under the table crying. But the attorney indicated that the defendant was able to compose himself within that five-minute period before court started and the attorney said expressly that he did not think the court needed to conduct a 1368 hearing, which is the California Penal Code section for competency hearings. So the attorney was convinced that the defendant could still assist him at trial. And in fact, the defendant testified at his sanity phase for two days, over 200 pages of testimony. And if you look at that, it's extremely lucid. He goes into all the details of his childhood, all of his thought processes leading up to the crime, step-by-step events of what happened after the crime. And this court has held that testifying in your own defense is the quintessential act of assisting your attorney. So that testimony was extremely significant. And the trial court noted in making the ruling that the defendant was, in fact, sane. He noted that the defendant was an extremely intelligent man, that he was a sensitive man. And that evidence was also borne out by the testimony. He was educated. He clearly was assisting his attorney throughout these proceedings. I think the attorney's statement that he did not believe any competency hearing was required is extremely significant. The cases have held that while that's not dispositive, the attorney is in the best position to know whether his client can assist him. And in this case, the attorney simply noted this incident on the record, but said he didn't need any further competency hearing. And it clearly was reasonable for the trial court to take that into consideration. In addition, he had expressly been found competent previously by the doctor who evaluated him for that purpose. And he, the defendant indicated that he had read the police reports. He understood what the charges against him were. He knew what the prosecutor's job was. He knew he was pursuing a plea of not guilty by reason of insanity. He knew what the court's job was. Those are the requirements for competence to stand trial. And it's a low level. It's not some difficult achievement to be competent. You simply have to understand what's going on. And clearly in this case, the defendant was able to, as exhibited by his behavior throughout the entire trial, there was evidence that he was mentally disordered, and the prosecutor never disputed that. And the trial court knew, of course, that he was pursuing a plea of not guilty by reason of insanity. But none of those psychiatric diagnoses were ever linked to an inability to understand what was going on at the trial. And those two are not the same. The Supreme Court has held that you can have a mental disorder or a mental problem that is relevant to different legal issues. And in this case, it was relevant possibly to his insanity plea. It didn't show any reason why he couldn't understand the proceedings. And there was no expert testimony ever suggesting that. On the medication issue, I think the appellate has actually conceded that in this particular case, if he were not taking medication, he would probably not be competent to stand trial. And if he were not taking medication, the court might have had some reason to doubt his competence. The defendant testified that he was getting various medications. He didn't know any of the names of what he was currently taking except for Prozac. But he said it improved his mood, and there was evidence in the record that he felt anxious when court appearances were upcoming. The doctors made sure he was on medication at that time, and that assisted him in calming down so that he could go through the court proceedings. So this case is totally distinguishable from the court's case in Moran, where there was no previous competency evaluation. There were no lengthy observations of the defendant. It was just a terse plea colloquy. And he simply said that he had been on medication, and the court said that there should be some further inquiry there. This case is totally different because the trial court had all this information in front of it indicating that the defendant was currently competent and was assisting his counsel and participating fully in the proceedings. And so for all of those reasons, it wasn't objectively unreasonable for the state court to reach that conclusion that a second competency hearing was not required. You agree that the Supreme Court case that controls this is the Fate v. Robinson? Well, I think DROP is probably the closest one, simply because it doesn't discuss specifically a second competency hearing, but it does have language. Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial. So, I mean, that's just a general statement that it can occur at various times in the trial and that a competency hearing might be required at any point in the proceedings. We certainly don't disagree with that. Unless there are further questions. Thank you. Thank you. Mr. Stachin, anything further? We believe that this case is very like the Moran case that was before this court twice at 972 Fed 2nd and 57 Fed 3rd. There were similar factors in the Moran case, a suicide attempt, depression, self-defeating behavior, and the main factor being on medication. The medication in the Moran case was high blood pressure medication, anti-seizure medication, and one anti-anxiety drug. Here the defendant was on two anti-depressants and also on an anti-anxiety medication. Another similar case is U.S. v. Howard at 381 Fed 3rd where the defendant was taking a drug variously described as Percodan or Percocet, a painkiller. The main side effects of which were lightheadedness and sedation, which are the side effects that are associated not only with the drugs that the medication that the defendant was undergoing during his trial, but also the effect of the interaction of the two different types of medications that he was taking. Your minute of rebuttal has expired. If you'd like to sum up? I think that's all I can summarize. Thank you very much. Thank both sides for your argument in this case. The case of Winters v. Knowles is now submitted for decision.
judges: Noonan, Tashima, W.fletcher